# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHWESTERN DIVISION

| | |
|---|---|
| **ANGELA ROBERSON,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **CIVIL ACTION NO.:** |
| | ) **3:07-CV-1541-VEH** |
| **MICHAEL J. ASTRUE,** | ) |
| **Commissioner of Social Security** | ) |
| **Administration,** | ) |
| | ) |
| **Defendant.** | ) |

## MEMORANDUM OPINION

The plaintiff, Angela Roberson ("Ms. Roberson"), brings this action pursuant to 42 U.S.C. § 1631(c)(3), §1383(c)(3) of the Social Security Act, seeking judicial review of a final adverse decision of the Commissioner of the Social Security Administration (hereinafter "Commissioner") denying her application for a Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB"). Ms. Roberson timely pursued and exhausted her administrative remedies available before the Commissioner. Accordingly, this case is now ripe for judicial review pursuant to 42 U.S.C. § 405(g).[1] The court finds that the ALJ lacked substantial evidence for his decision, and that it should be reversed and remanded.

---

[1] 42 U.S.C. § 1383(c)(3) renders the judicial review provisions of 42 U.S.C. § 405(g) fully applicable to claims for SSI.

## FACTUAL AND PROCEDURAL HISTORY

Ms. Roberson was a 41year-old female at the time of her hearing before the administrative law judge (hereinafter "ALJ"). (Tr. 341). She has a high school education equivalency diploma. (Tr. 344). Her past work experiences include employment as a waitress, food service manager, sewing machine operator, and cook helper. (Tr. 11, 25).

Ms. Roberson claims she became disabled on April 1, 2003, due to the following: chronic back pain due to degenerative disc disease; degenerative joint disease of her left ankle, right knee, and right shoulder; carpal tunnel syndrome of the right wrist; a bipolar disorder; major depression with psychotic features (in partial remission); a personality disorder; and substance abuse, including alcohol and cocaine. (Tr. 19, 21, 22, 77).[2] Her last period of successful work ended in 2004. (Tr. 18, 79). Ms. Roberson was last insured for Title II disability benefit payments on March 31, 2005. (Tr. 339).

Ms. Roberson filed her application for a period of disability and DIB on December 18, 2003. (Tr. 19). She also filed a Title XVI application for SSI on December 18, 2003. (Tr. 18). The claims were denied by the Commissioner on July

---

[2]At the hearing held on October 5, 2005, claimant amended the onset date to September 6, 2003. (Tr. 19, 380).

30, 2004. (Tr. 19). Ms. Roberson filed a timely written request for a hearing on September 22, 2004. (Tr. 19). The first hearing was held on October 5, 2005, and a supplemental hearing was held on March 30, 2006. (Tr. 19). The ALJ concluded that Ms. Roberson was not disabled and denied her application on May 8, 2006. (Tr. 19). Ms. Roberson timely requested a review of the ALJ's decision on June 6, 2006, and submitted a memorandum in support of her request for review of the ALJ's decision on September 5, 2006. (Tr. 10, 11). The Appeals Council denied Ms. Roberson's request for review on June 23, 2007. (Tr. 5). The ALJ's decision thus became the Commissioner's final decision on that date. (Tr. 5).

Ms. Roberson filed a Complaint on August 22, 2007, which asks this court to review the ALJ's decision. (Compl. 2). Ms. Roberson also filed a motion to proceed in forma pauperis on August 22, 2007. (Doc. 2). This court denied the motion to proceed in forma pauperis on August 23, 2007.

## **STANDARD OF REVIEW**[3]

The function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal

---

[3] In general, the legal standards applied are the same regardless of whether a claimant seeks DIB or SSI. However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations of statutes or regulations found in quoted court decisions.

standards were applied. *Richardson v. Perales,* 402 U.S. 389, 390, 401 (1971); *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988); *Graham v. Bowen*, 790 F.2d 1572, 1575 (11th Cir. 1983); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). This court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth*, 703 F.2d at 1239. The court will determine that the ALJ's opinion is supported by substantial evidence if it finds "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* Substantial evidence is "more than a scintilla, but less than a preponderance." *Id.*

## STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability benefits and establish his entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.[4] The Regulations define "disabled" as the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505(a). To establish an entitlement to

---

[4]The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499, revised as of March 27, 2008.

disability benefits, a claimant must provide evidence about a "physical or mental impairment" which "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(i-v). The Commissioner must determine in sequence:

(1) whether the claimant is currently employed;
(2) whether the claimant has a severe impairment;
(3) whether the claimant's impairment meets or equals an impairment listed by the Secretary;
(4) whether the claimant can perform her past work; and
(5) whether the claimant is capable of performing any work in the national economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to former applicable C.F.R. section), *overruled on other grounds by Johnson v. Apfel,* 189 F.3d 561 (7th Cir. 1999); *accord, McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "Once the claimant has satisfied steps one and two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her work, the burden shifts to the Secretary to show that the claimant can perform some other job." *Pope*, 998 F.2d at 477; *Foote*, 67 F.3d at 1559. The Commissioner must further show that such work exists in the national

economy in significant numbers.

## **FINDINGS OF THE ADMINISTRATIVE LAW JUDGE**

The ALJ found that Ms. Roberson has not engaged in substantial gainful activity at any time relevant to this decision. (Tr. 21). He also found that Ms. Roberson's had the following "severe" impairments based on the Regulations 20 C.F.R. § 404.1520(c) and § 416.920(c): chronic back pain due to degenerative disc disease; degenerative joint disease of her left ankle, right knee, and right shoulder; carpal tunnel syndrome of the right wrist; a bipolar disorder; major depression with psychotic features (in partial remission); a personality disorder; and substance abuse, including alcohol, cocaine. (Tr. 21, 22). The ALJ then held that the medically determinable impairments, either alone or in combination, do not meet or medically equal one of the listed impairments in 20 C.F.R. § 404, subpt. P, app. 1 (2007). (Tr. 22).

The ALJ concluded that Ms. Roberson's impairments prevent her from performing past relevant work. (Tr. 25). The ALJ determined that Ms. Roberson retains a residual functioning capacity ("RFC") to perform a limited range of light exertional activity. (Tr. 25). Ms. Roberson could stand for 3 hours, walk for 2 hours, and sit for 6 hours in an 8 hour work day and be able to lift 15 pounds occassionally based on Dr. Crouch's assessment. (Tr. 24).

The vocational expert ("VE") testified that Ms. Roberson can perform a full range of light unskilled jobs including occupations such as an office helper, photo copy machine operator, and tanning salon attendant. (Tr. 26). The ALJ then considered Ms. Roberson's age, education, work experience, and residual functional capacity. (Tr. 26). Based on testimony from the VE, the ALJ determined that a significant number of jobs exist in Alabama and in the national economy that Ms. Roberson can perform. (Tr. 26).

The ALJ concluded that Ms. Roberson was not under a disability at any time through the date of the ALJ's decision and, therefore, was not eligible for DIB under §§ 216(i) and 223(d) of the Social Security Act. (Tr. 27). Further, based on her application for SSI, Ms. Roberson was not disabled under § 1614(a)(3)(A) of the Social Security Act. (Tr. 27).

## **ANALYSIS**

A court can reverse a finding of the Secretary if it is not supported by substantial evidence. 24 U.S.C. § 405(g). "This does not relieve the court of its responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding." *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) (citing *Strickland v. Harris,* 615 F.2d 1103, 1106 (5th Cir. 1980)). However, this court is limited in its review of the Commissioner's

decision in that the Commissioner's findings must be reviewed with deference. *See Martin v. Sullivan,* 894 F.2d 1520, 1529 (11th Cir. 1990) (citing *Graham v. Bowen*, 790 F.2d 1572, 1575 (11th Cir. 1986)). Ms. Roberson asserts that "the decision of the Commissioner is not supported by substantial evidence and should be reversed." (Doc. 8 at 12). In its review, this court agrees with Ms. Roberson that the ALJ's decision was not supported by substantial evidence and that it is due to be reversed and remanded for further proceedings.

### I.  THE ALJ'S DECISION THAT MS. ROBERSON IS NOT DISABLED IS NOT SUPPORTED BY SUBSTANTIAL EVIDENCE.

The ALJ must "take into account and evaluate the record as a whole." *McCruter v. Bowens* 791 F.2d 1544, 1548 (11th Cir. 1986). "It is not enough to discover a piece of evidence which supports the decision, but to disregard other contrary evidence." *Id*. The ALJ's opinion is materially deficient in this respect for several reasons.

### A. Ms. Roberson's Global Assessment of Functioning ("GAF")[5] Scores

First, the ALJ failed to adequately address Ms. Roberson's GAF scores. Notably, he completely disregarded an unfavorable GAF score of 50[6] in his decision and never clarified on the record whether or why he accepted her GAF score of 51[7] over the one of 50.

In the nearly identical case of *McCloud v. Barnhart*, the Eleventh Circuit reversed and remanded when the ALJ failed completely to consider a GAF score of 48 and was also unclear about the weight he afforded the claimant's GAF of 45. *Id.*, 166 Fed. Appx. 410 (11th Cir. 2006).

---

[5] The GAF Scale (Axis V of the Multiaxial Assessment) "is for reporting the clinician's judgment of the individual's overall level of functioning. This information is useful in planning treatment and measuring its impact, and in predicting outcome...the GAF scale is divided into 10 ranges of functioning. Making a GAF rating involves picking a single value that best reflects the individual's overall level of functioning...In most instances, ratings on the GAF Scale should be for the current period..." American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders, 32-3 (4th ed. text revision, 2000) (DSM-IV-TR).

[6] A GAF score in the range from 41-50 indicates "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR [sic] any serious impairment in social, occupational, or school functioning (e.g., few friends, unable to keep a job.)" American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders, 34 (4th ed. text revision, 2000) (DSM-IV-TR).

[7] A GAF score in the range from 51-60 indicates"[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR [sic] moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)." *Id.*

In *McCloud*, the Eleventh Circuit held:

> We are unable to determine from the record what weight the ALJ placed on the GAF score of 45; therefore, we reject the Commissioner's argument that any error was harmless. With the knowledge that a GAF score of 45 reflects severe impairments, the ALJ should determine what, if any, weight to place on the score. In addition to this error, the ALJ failed to consider McCloud's score of 48 from June 2000, which occurred just day before she filed for SSI benefits, when determining whether she was disabled. On remand, the ALJ must also consider what, if any, weight to accord McCloud's June 2000 GAF score.

*Id.*, 166 Fed. Appx. 410 at 418.

Just like the facts in *McCloud*, the ALJ neither explained the weight he gave to the GAF scores or why he discredited Dr. Wood's GAF but still accepted his medical source statement[8] regarding his examination of Ms. Roberson. This court is troubled by the unsubstantiated rationale of the ALJ in excluding some parts and accepting other parts of findings from the same psychological consultative examination. In further developing the record, it may become clear that the GAF score of 50 merits little weight. However, the court cannot confirm such a conclusion based on the record before it at this time.

---

[8] Medical source statements are "medical opinions submitted by acceptable medical sources, including treating sources and consultative examiners, about what an individual can still do despite a severe impairment(s), in particular about an individual's physical and mental abilities to perform work-related activities on a sustained basis." SSR 96-5p.

Moreover, the Supreme Court has stated that "[t]he trier of fact has the duty to resolve" the contest between "conflicting medical evidence." *Richardson v. Perales*, 402 U.S. 389, 399 (1971). Although the ALJ mentioned the GAF score of 50 in the supplemental hearing, he never discussed it in his analysis of claimant's limitations. By not addressing the GAF score in his decision, he failed to resolve a conflict in the evidence between the medical source opinions that show only moderate impairment and the GAF score of 50 that indicates severe impairment.

In *Cowart v. Schwiker*, 662 F.2d 731, 735 (11th Cir. 1981), the Eleventh Circuit stated that, in order to fulfill his basic obligation to develop a full and fair record, the ALJ is required to "state specifically the weight accorded to each item of evidence and why he reached that decision" in order to enable a reviewing court to determine whether the ultimate decision is rational based on substantial evidence. Here, while the ALJ did state that he gave considerable weight to Dr. Wood's opinion, he never mentioned the GAF score that Dr. Wood assigned or what weight he gave such evidence. (Tr. 25).

Furthermore, this case can be distinguished from the decision reached by this court in *Carlisle v. Astrue*. (3:06-CV-0983-VEH June 5, 2007, Doc. 11). In *Carlisle*, this court affirmed an ALJ's decision to not award DIB and SSI where he mentioned an unfavorable GAF of 45 and explained that he afforded such evidence little weight.

*Id.* More specifically, the ALJ stated that he discredited such evidence because the therapist relied on the subjective reporting of the claimant and "seemed to uncritically accept as true most, if not all, of what the claimant reported." *Id.* Here, however, the ALJ never mentioned any GAF scores or gave an explanation as to why the lower GAF score should be discredited over the higher one.

### B. Ms. Roberson's Personality Testing Results

Second, the ALJ never addressed Ms. Roberson's personality results, which were favorable to her credibility. More specifically, Dr. Wood administered the Minnesota Multiphasic Personality Inventory - Second Edition (MMPI-2) to ascertain objective personality testing. Upon examination of her MMPI-2 results, Dr. Wood stated that "the validity indicators... produced no support for the idea she might have exaggerated her symptoms significantly" and found Ms. Roberson to have good candor. (Tr. 317-322). Similar to the GAF analysis, the failure of the ALJ to mention this evidence, much less attempt to discredit it or explain its weight, is at odds with the ALJ's duty to develop a fair record especially when so much of his opinion turns upon Ms. Roberson's lack of credibility and also relies upon Dr. Wood's medical source statement.

### C. Improper Hypothetical Posed to the VE

Third, the ALJ's hypothetical questions posed to the VE were not proper.

12

More specifically, beyond the cursory finding that all impairments were considered, the ALJ failed to further consider the combination of the moderate physical impairments based on Dr. Crouch's assessment and severe mental limitations indicated by Dr. Wood's GAF score of 50. "In order for a VE's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999). The ALJ did not pose a question based on all of the evidence, both favorable and unfavorable. At the supplemental hearing, the VE testified that Dr. Wood's GAF score of 50 alone suggests an inability to work. (Tr. 371-72). However, the ALJ ambiguously instructed the VE that he gave greater weight to the medical source opinions without reference to any of Ms. Roberson's GAF scores. (Tr. 370-72). Apparently not considering any of the GAF data[9], the VE then testified that based on the medical source opinions, she thought Ms. Roberson would be able to perform the jobs identified. *Id*. The ALJ neglected to assess the impact of Ms. Roberson's GAF scores in combination with her other impairments either in his decision or through an appropriate question posed to the VE. (Tr. 22-26).

In conclusion, the ALJ failed (1) to consider the disabling evidence of Ms.

---

[9]The transcript of the hearing is not clear to what degree, if any Ms. Roberson's GAF scores factored into the VE's answer due to the vagueness of the ALJ's questioning.

Roberson's mental health including any articulation of reasons for disregarding the GAF score of 50 or favoring the GAF score of 51; (2) to address the results of Ms. Roberson's personality testing by Dr. Wood which substantiated her candor; and (3) to pose a complete hypothetical to the VE that factored in her GAF results.  For these reasons, his decision that Ms. Roberson is not disabled is not supported by substantial evidence.[10]

## **CONCLUSION**

The court concludes that the ALJ's determination that Ms. Roberson is not disabled is not supported by substantial evidence.  The Commissioner's final decision is therefore due to be reversed and remanded, and a separate order in accordance with the memorandum opinion will be entered.

**DONE** and **ORDERED** this the 11th day of June, 2008.

_____
**VIRGINIA EMERSON HOPKINS**
United States District Judge

---

[10] Because the Court reverses on the GAF and other issues, it does not reach the claimant's improper legal standard argument.